**Sheldon David BAUM, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. C14–91–00783–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 11, 1993.

J. Phillip Scardino, Houston, for appellant.

Rikke Burke, Houston, for appellee.

Before ROBERTSON, CANNON and BOWERS, JJ.

OPINION

BOWERS, Justice.

Appellant entered a plea of not guilty before the jury to the offense of theft of property valued at more than $750.00 but less than $20,000.00. TEX.PENAL CODE ANN. § 31.03. He was convicted and the court assessed punishment, enhanced under TEX.PENAL CODE ANN. § 12.42(c) at 10 years probated. We affirm.

In 1982, appellant owned property at 14158 Limerick in Tomball, Harris County, Texas. The property consists of one acre of land and a house. Gibralter Savings held the first lien on the property. A second lien on the property was held by David Davenport to secure a $15,000.00 loan he had made to appellant. As additional security, Davenport also took a deed to the property.

In the summer of 1983, appellant wanted to sell the property to Arthur Heinicken, therefore, Davenport deeded the property to appellant. Appellant financed the sale to Heinicken by executing a 10–year note for $48,000.00. Davenport took a second lien on the $48,000.00 note to secure his $15,000.00 loan with appellant.[1]

On July 28, 1983, appellant sold the first five years of the $48,000.00 note to Mortgage Investors. Mortgage Investors eventually transferred its interest to Chrysler First Financial.

On January 12, 1984, appellant and his wife transferred the last five years of the note to Davenport. Davenport accepted the transfer in lieu of payment of the $15,-000.00 loan.

Because of the various transactions pertaining to the liens on the property, appellant and his wife no longer held any interest in the property as of January 12, 1984. The lien holders at that time were Gibralter Savings, Chrysler First Financial and Davenport.

Approximately four years later, on May 1, 1988, Arthur Heinicken died. Appellant contacted Heinicken's mother in June 1988 and informed her that appellant and his wife held the $48,000.00 note on the Limerick property. He told Mrs. Heinicken her son was four months behind on his house payments and Gibralter Savings was going to foreclose unless the arrearages was paid.

Appellant said he would reimburse Mrs. Heinicken $10,000.00 from the sale of the house if she would pay the arrearages of

$1,840.00. Mrs. Heinicken gave appellant a check for $1,840.00.

In 1990, Mrs. Heinicken discovered that appellant and his wife did not own an interest in the Limerick property and that appellant had not sent the money to Gibralter Savings. Mrs. Heinicken sent appellant a letter demanding he refund her money. Appellant did not respond and Mrs. Heinicken did not receive $10,000.00 when the house was sold.

In his sole point of error, appellant argues that the evidence is insufficient to support his conviction because the State failed to prove appellant had the intent to commit theft at the time he took Mrs. Heinicken's check for $1,840.00.

A person commits theft "if he unlawfully appropriates property with intent to deprive the owner of property." TEX.PENAL CODE ANN. § 31.03(a). "Deprive" means "to withhold property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner." TEX.PENAL CODE ANN. § 31.01(3).

In reviewing the sufficiency of the evidence, the Court must determine whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Butler v. State*, 769 S.W.2d 234 (Tex.Crim.App.1989).

An accused's intent can be inferred from his acts, words and conduct. *Henderson v. State*, 825 S.W.2d 746, 749 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd). The jury is entitled to consider events that occurred before, during, and after the commission of the offense. *Id.* Appellant argues that a review of the circumstances surrounding the transaction between him and Mrs. Heinicken clearly shows he did not have the intent to permanently deprive Mrs. Heinicken of her money.

---

1. Although Davenport refers to a "Lien on the Note," in actuality it was a pledge to secure his $15,000.00 note.

First, appellant asserts that although the money from Mrs. Heinicken was not sent to Gibralter Savings, the money was used for repairs to the Limerick property.

Second, appellant argues he executed an agreement with Mrs. Heinicken contemporaneously with the receipt of the money and this indicates he intended to return the money upon the sale of the Limerick property. The written agreement provided that Mrs. Heinicken would give appellant $1,840.00 for delinquent payments owed to Gibraltar Savings. The agreement stated appellant's wife owned a second lien on the property and she agreed to pay Mrs. Heinicken $10,000.00 upon the sale of the property. The agreement was signed by appellant's wife and witnessed by appellant. Mrs. Heinicken did not sign the agreement.

Third, appellant maintains he held a reversionary interest in the property through the Chrysler First Financial lien giving him rights to the property in case of a default.

Fourth, Mrs. Heinicken and appellant were involved in another real estate transaction. Appellant insists that Mrs. Heinicken's $1,840.00 was protected by the property subject to that transaction.

Fifth, upon learning that appellant did not have an interest in the property, Mrs. Heinicken wrote to appellant demanding the return of the money. Appellant asserts this indicates Mrs. Heinicken characterized the money as a loan and therefore the dispute was one amenable to adjudication in a civil court.

■ Mr. Davenport testified that in June 1988, he and Gibralter Savings were the only two parties with an interest in the Limerick property. He further testified that all payments were current as of June 1988.

An assistant vice-president for First Gibralter Bank testified that in June 1988 the loan was current and that even if the loan had been in arrears, appellant would not have been notified because he was not an interested party.

Mrs. Heinicken testified she would not have given appellant any money if she had known appellant and his wife did not own a second lien on the property; if she had known appellant's wife did not own a second deed of trust; if she had known appellant was going to cash her check instead of sending the payment to Gibralter Savings; if she had known her son was not four months delinquent on payments to Gibralter Savings; and if she had known her son did not owe appellant any money on the original $48,000.00 note.

■ The trier of fact is the exclusive judge of the facts, credibility of witnesses and weight to be afforded their testimony. *Bonham v. State*, 680 S.W.2d 815, 819 (Tex.Crim.App.1984), *cert. denied*, 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985). The jury is free to accept one version of the facts, reject another, or reject all or any of a witness's testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex.Crim.App. [Panel Op.] 1981).

From the evidence presented at trial, the jury could conclude that appellant lied to Mrs. Heinicken when he told her he and his wife held the second lien on the property, that Mrs. Heinicken's son was four months in arrears and that the property was subject to foreclosure.

After reviewing the record, we find that a rational trier of fact could have found appellant guilty beyond a reasonable doubt of having the intent to deprive Mrs. Heinicken of her money. We overrule appellant's sole point of error.

Accordingly, we affirm the judgment of the trial court.